## Wilson *v.* City Bank.

1. Under a sound construction of the thirty-fifth and thirty-ninth sections of the Bankrupt Act something more than passive non-resistance in an insolvent debtor, is necessary to invalidate a judgment and levy on his property when the debt is due and he has no defence.

2. In such case there is no legal obligation on the debtor to file a petition in bankruptcy to prevent the judgment and levy, and a failure to do so is not sufficient evidence of an intent to give a preference to the judgment creditor, or to defeat the operation of the bankrupt law.

3. Though the judgment creditor in such a case may know the insolvent condition of the debtor, his judgment and levy upon his property are not, therefore, void, and are no violation of the act.

4. A lien thus obtained by him will not be displaced by subsequent proceedings in bankruptcy, though commenced within four months after levy of the execution or rendition of the judgment.

5. Very slight circumstances, however, which tend to show the existence of an affirmative desire on the part of the bankrupt to give a preference, or to

---

defeat the operation of the act, may, by giving color to the whole transaction, render the lien void.

6. These special circumstances must be left to decide each case as it arises. The present one held to be destitute of any such evidence, and distinguished from *Buchanan* v. *Smith* (16 Wallace, 277).

ON certificate of division in opinion between the judges of the Circuit Court for the District of Minnesota; the case being thus:

The Bankrupt Act of 1867* provides in the earlier part of it, that if any persons residing within the jurisdiction of the United States, shall apply by petition to the judge of the judicial district in which he has resided, &c., setting forth "his inability to pay all his debts in full, his willingness to surrender all his estate and effects, for the benefit of his creditors," and his desire to obtain the benefits of the act, he may, after certain proceedings mentioned, and with certain excepted cases, obtain "a discharge from all his debts." A subsequent part of the same act provides for proceeding by creditors to obtain a decree of bankruptcy against their debtor, who has not made any such voluntary application.

After the enactment relating to the first case contemplated—that is to say, of the debtor, himself, voluntarily applying to be decreed a bankrupt, the act in its thirty-fifth section thus proceeds:

"SECTION 35. That if any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, *with a view to give a preference to any creditor* or person having a claim against him, or who is under any liability for him, *procures* any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and *that such attachment, payment, pledge, as-*

---

* 14 Stat. at Large, 534.

signment, or conveyance is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property or the value of it from the person so receiving it, or so to be benefited.

"And if any person being insolvent or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any payment, sale, assignment, transfer, conveyance, or other disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and that such payment, sale, assignment, transfer, or other conveyance is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same being distributed under this act, or to defeat the object of, or in any way impair, hinder, impede, or delay the operation and effect of, or to evade any of the provisions of this act, the sale, assignment, transfer or conveyance shall be void, and the assignee may recover the property, or the value thereof as assets of the bankrupt.

"And if such sale, assignment, transfer or conveyance is not made in the usual and ordinary course of business of the debtor, the fact shall be *primâ facie* evidence of fraud."

The thirty-ninth section, which relates to "involuntary bankruptcy," enacts thus:

"SECTION 39. That any person residing and owing debts as aforesaid who, after the passage of this act, shall depart from the State, district, or Territory of which he is an inhabitant, with intent to defraud his creditors, or being absent shall, with such intent, remain absent; OR shall conceal himself to avoid the service of legal process, in any action for the recovery of a debt or demand provable under this act, OR shall conceal or remove any of his property to avoid its being attached, taken or sequestered on legal process, OR shall make any assignment, gift, sale, conveyance, or transfer of his estate, property, rights or credits, either within the United States or elsewhere, with intent to delay, defraud, or hinder his creditors, OR who has been arrested and held in custody under or by virtue of mesne process or execution, issued out of any court of any State, district, or Territory, within which such debtor resides or has property, founded upon a demand in its nature provable against a bank-

rupt's estate under this act, and for a sum exceeding $100, and such process is remaining in force and not discharged by payment or in any other manner provided by the law of such State, district, or Territory applicable thereto, for a period of seven days; OR has been actually imprisoned for more than seven days in a civil action founded on contract for the sum of $100 or upwards; OR who, being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall make any payment, gift, grant, sale, conveyance or transfer of money or other property, estate, rights or credits, or give any warrant to confess judgment; or *procure or suffer* his property to be taken on legal process, *with intent to give a preference to one or more of his creditors*, or to any person or persons who are or may be liable for him as indorsers, bail, sureties, or otherwise, or with the intent, by such disposition of his property, to defeat or delay the operation of this act; OR who, being a banker, merchant or trader, has fraudulently stopped or suspended, and not resumed payment of his commercial paper within a period of fourteen days, shall be deemed to have committed an act of bankruptcy, and, subject to the conditions hereinafter prescribed, shall be adjudged a bankrupt on the petition of one or more of his creditors, the aggregate of whose debts provable under this act amount to at least $250, provided such petition is brought within six months after the act of bankruptcy shall have been committed.

"And if such person shall be adjudged a bankrupt, the assignee may recover back the money or other property so paid, conveyed, sold, assigned or transferred contrary to this act, provided the person receiving such payment or conveyance had reasonable cause to believe that a fraud on this act was intended, or that the debtor was insolvent. And such creditor shall not be allowed to prove his debt in bankruptcy."

These enactments being in force, one Wilson, assignee in bankruptcy of the firm of Vanderhoof Brothers, lately merchants at the city of St. Paul, filed a bill against the City Bank of the said city to determine which of the parties, complainant or defendant, was entitled to the stock of goods of the bankrupts, or the proceeds thereof. The facts of the case, about which there was no dispute, were thus found by the court:

"On the 26th of February, 1870, judgment by default was rendered by one of the District Courts of the State of Minnesota in favor of the bank against Vanderhoof Brothers for the sum of $2130. On the same day execution was issued, and the sheriff immediately made a levy upon the whole stock of goods of the debtors, which was sold by him for $2385, which is now in the hands of the bankrupt court to await the determination of this suit. The suit by the bank was brought on promissory notes, commercial paper made by the debtors Vanderhoof Brothers to the City Bank of St. Paul, one of which notes was more than fourteen days past due when suit was brought thereon by the bank.

" After the levy of the said execution and before the sale by the sheriff, Vanderhoof Brothers were adjudicated bankrupts on the petition of creditors filed against them after judgment had been obtained and levy made under the execution. The Vanderhoofs had no defence to the notes upon which the bank had sued them, and put in no defence. They had no property except their said stock in trade, which, at cost prices, was about equal to the amount of their liabilities.

"The debtors Vanderhoof Brothers were insolvent when said suit was brought against them by the bank, and the bank had then reasonable cause to believe it, and knew that they had committed an act of bankruptcy, and that they had no property but their said stock in trade. The Vanderhoofs gave no notice to any of their creditors of the suit commenced against them by the bank, and having no defence, did not defend it nor go into voluntary bankruptcy, nor otherwise make any effort to prevent the judgment being obtained or the levy of the execution."

On this case the following questions arose at the trial, in relation to which the judges were opposed in opinion:

· "1st. Whether or not an intent on the part of said debtors, Vanderhoof Brothers, to suffer their property to be taken on legal process, to wit, the said execution, with intent to give a preference to said bank, or with intent thereby to defeat or delay the operation of the Bankrupt Act, can be inferred from the foregoing facts?

"2d. Whether, under said facts, the said bank in obtaining

said judgment and making the said levy had reasonable cause to believe that a fraud on the Bankrupt Act was intended?

"3d. Whether, under said facts, the bank obtained by the levy of its execution a valid lien on the said goods as against the assignee in bankruptcy?"

The questions were accordingly certified here for decision.

*Mr. E. G. Rogers, for the assignee in bankruptcy:*

I. Being insolvent, the Vanderhoofs suffered their entire stock of goods to be seized on execution on the judgment by default, obtained against them by the bank, with intent to give a preference to the bank over their other creditors, and in fraud of the thirty-fifth and thirty-ninth sections of the Bankrupt Act.

(1.) They suffered their property to be seized on execution.*

(2.) This was a transfer of the property, within the meaning of the thirty-fifth and thirty-ninth sections of the act.†

The bank stands in no better position than if the Vanderhoofs had paid the debt in money or in goods.‡

(3.) It was a transfer out of the usual and ordinary course of Vanderhoof Brothers' business, and, therefore, *primâ facie* fraudulent.

(4.) The necessary consequence of Vanderhoof Brothers suffering their entire stock in trade, and their entire property to be levied on, was to break up their business and put it out of their power to pay their other creditors. It appropriated their whole property to the payment of a single creditor, putting the property into the hands of that creditor,

---

* In re Dibblee, 2 Bankrupt Register, 185–187.

† In re Black & Secor, 1 Bankruptcy Register, 81; Wilson *v.* Brinkman, 2 Id. 149; In re Wright, Ib. 155; Fitch et al. *v.* McGie, Ib. 164.

‡ Shawhan *v.* Wherritt, 7 Howard, 644; Smith *v.* Buchanan, 4 Bankrupt Register, 134. [The second cited case which came up on appeal to this court, and in which the decree of the court below was *affirmed* (see *Buchanan* v. *Smith,* 16 Wallace, 277), was not cited in its appellate form, by the learned counsel, the volume in which the report is contained not having been at the time published.—REP.] Wilson *v.* City Bank, 5 Id. 274, opinion of Dillon, J.

enabling him to pay himself in full, without regard to whether other creditors were paid or not, and thereby necessarily gave a preference to that creditor.

It was an act of bankruptcy, and under the circumstances it was almost inevitable that the other and unpreferred creditors should proceed against Vanderhoof Brothers in bankruptcy (as has actually been the case), in which event the effect of suffering the levy is to impede, hinder, and delay the operation of the Bankrupt Act.

Vanderhoof Brothers must be presumed to have intended these natural and legal consequences of their conduct; they might have prevented them by filing their petition in voluntary bankruptcy. Not having done so, but having suffered a creditor to obtain a preference which they might have prevented, they must be presumed to have intended to give such preference.*

II. The bank having knowledge of the Vanderhoofs' acts of bankruptcy, and having also at least reasonable cause to believe the firm insolvent, had also reasonable cause to believe that a fraud upon the Bankrupt Act was intended by them, and in fact did themselves intend to obtain a preference in fraud of the act.

1. It follows as a necessary conclusion that if the bank had reasonable cause to believe the Vanderhoofs insolvent, "they had reason to believe that the Vanderhoof Brothers in neglecting to make payment of their debts, in submitting to suit and in neglecting to take the steps contemplated by the Bankrupt Act for the purpose, and equal benefit of all their creditors according to the plain intent and purport of the law, were acting in fraud of the law itself."†

---

* Denny v. Dana, 2 Cushing, 160; Beals v. Clark, 13 Gray, 18; In re Drummond, 1 Bankrupt Register, 10; In re Black & Secor, Ib. 81; In re Craft, Ib. 89; In re Sutherland, Ib. 140; Foster v. Hackley, 2 Id. 131; In re Dibblee, Ib. 185; In re Wells, 3 Id. 95; In re Smith, Ib. 98; In re Clark & Bininger, Ib. 99; S. C., on appeal, 4 Id. 77; Campbell v. The Traders' Bank et al., 3 Id. 124; Driggs v. Moore, Ib. 149; In re Bloss, 4 Id. 37; Martin v. Toof, 4 Id. 158.

† Wilson v. City Bank, 5 Bankrupt Register, 274, opinion of Dillon, J.; Smith v. Buchanan et al., 4 Id. 134.

They had reason to believe that if they seized all the Vanderhoof goods on execution, the bank would obtain a preference over their other creditors, and thereby a fraud on the act would be perpetrated. They as well as the Vanderhoofs must be presumed to have intended the consequences of their conduct, and these consequences were to give the bank a preference, and to prevent the property from being distributed equally among all Vanderhoof Brothers' creditors under the provisions of the Bankrupt Act.

2. The transfer effected by the levy being out of the usual and ordinary course of Vanderhoof Brothers' business, was *primâ facie* evidence to the bank of fraud.

III. The bank, after acts of bankruptcy of the Vanderhoofs, of which it had full knowledge, and with reasonable cause to believe the Vanderhoofs insolvent, could not by proceeding in a State court obtain a valid lien and seize the property of the bankrupts to the exclusion of their other creditors. This is said by the Supreme Court of the United States, in *Shawhan* v. *Wherritt*,[*] to be " the chief and important question involved " in that case, and it was there held that such a proceeding on the part of the creditor was a fraud upon the Bankrupt Act, and therefore void.

*Mr. Harvey Officer, contra*, citing *Wright* v. *Filley*,[†] as in point, and other cases.

Mr. Justice MILLER delivered the opinion of the court.

The questions presented to this court by the certificate of division require, for a satisfactory answer, a careful consideration and construction of sections thirty-five and thirty-nine of the Bankrupt law, with reference to the general spirit and purpose of that law. In looking to these the first and most important consideration which demands our attention is the discrimination made by the act between the cases of voluntary and involuntary bankruptcy. In both classes of cases undoubtedly the primary object is to secure a just distribution of the bankrupt's property among his creditors,

---

[*] 7 Howard, 627, 644, 645.　　　　[†] 4 Bankrupt Register, 197.

and in both the secondary object is the release of the bank-rupt from the obligation to pay the debts of those creditors.

But in case of voluntary bankruptcy the aid of the law is invoked by the bankrupt himself, with the purpose of being discharged from his debts as his principal motive, and in the other the movement is made by his creditors with the pur-pose of securing the appropriation of his property to their payment; the discharge being with them a matter of no weight and often contested.

There is a corresponding difference in the facts on which the action of this court can be invoked in these different classes of bankruptcy. When the party himself seeks the aid of the court the averment he is required to make is a very simple one, namely, that "he is unable to pay all his debts in full, and is willing to surrender all his estate and effects for the benefit of his creditors, and desires to obtain the benefit of the act," that is, to be discharged from the claims of his creditors. On filing a petition containing this request he is declared by the court a bankrupt. The alle-gation cannot be traversed, nor is any issue or inquiry as to its truth permitted. The administration of his effects pro-ceeds thereafter under the direction of the court, and may end in paying all his debts with a surplus to be returned to the bankrupt, or the result may be nothing for the creditors, and the unconditional release of the bankrupt.

But while the debtor may on this broad basis call on the court to administer his estate, the creditor who desires to do the same thing is limited to a few facts or circumstances, the existence of which are essential to his right to appeal to the court. And when any one of these facts is set forth in a petition to the court by the creditor, the truth of the alle-gation may be denied by the debtor, and on the issue thus found, he may demand the verdict of a jury.

The reason for this wide difference in the proceedings in the two cases is obvious enough. When a man is himself willing to refer his embarrassed condition to the proper court with a full surrender of all his property, no harm can come to any one but himself, and there can be no solid objec-

tion to the course he pursues. But when a person claims to take from another all control of his property, to arrest him in the exercise of his occupation, and to impair his standing as a business man, in short to place him in a position which may ruin him in the midst of a prosperous career, the precise circumstances or facts on which he is authorized to do this, should not only be well defined in the law, but clearly established in the court.

It is the thirty-ninth section of the Bankrupt Act which lays down in nine or ten subdivisions the facts and circumstances which give a man's creditors the right to have him declared a bankrupt, and his property administered in a bankruptcy court. One of them is the case of a person who being bankrupt or insolvent, or in contemplation of insolvency, shall make any payment, gift, grant, sale, conveyance, or transfer of money or other property, estate, rights, or credits, or give any warrant to confess judgment or procure or suffer his property to be taken on legal process with intent to give a preference to one or more of his creditors, or to any person or persons who may be liable for him as indorsers, bail sureties, or otherwise, or with intent by such disposition of his property to defeat or delay the operation of the act. And the same section declares that if such person shall be adjudged a bankrupt, the assignee may recover back the money or property so paid, conveyed, sold, assigned, or transferred, contrary to the act; provided, the person receiving such payment or conveyance, had reasonable cause to believe that a fraud on the Bankrupt Act was intended, or that the debtor was insolvent.

The case before us is one of involuntary bankruptcy; but there is no question here whether the party was rightfully declared a bankrupt. The statement of facts shows that the debtors were insolvent when the bank commenced its proceedings in the State court, and that the bank had then reasonable cause to believe they were insolvent, and knew that they had committed an act of bankruptcy, to wit, had permitted one of their notes to go unpaid more than fourteen days after it was due.

It is maintained that under these circumstances the bankrupt "suffered his property to be taken on legal process with intent to give a preference to the bank, and to defeat or delay the operation of the act." Undoubtedly, the facts stated bring the bank within the proviso, as to knowledge of the debtor's insolvency; and if the debtor suffered his property to be taken within the meaning of the statute, with intent to defeat or delay the operation of the act, then the assignee should recover the property. So that this sufferance and this intent on the part of the bankrupt are the matters to be decided. The first and principal question on which the judges became divided is, whether such intent is to be inferred from the facts stated.

The thirty-fifth section of the act, which is designed to prevent fraudulent preferences of a person in contemplation of insolvency or bankruptcy, declares that any attachment or seizure under execution of such person's property, *procured by him* with *a view* to give such a preference, shall be void if the act be done within four months preceding the filing of the petition in bankruptcy by or against him. Though the main purpose of the thirty-ninth section is to define acts of the trader which make him a bankrupt, and that of the thirty-fifth is to prevent preferences by an insolvent debtor in view of bankruptcy, both of them have the common purpose of making such preferences void, and enabling the assignee of the bankrupt to recover the property; and both of them make this to depend on the intent with which the act was done by the bankrupt, and the knowledge of the bankrupt's insolvent condition by the other party to the transaction. Both of them describe, substantially, the same acts of payment, transfer, or seizure of property so declared void. It is, therefore, very strongly to be inferred that the act of *suffering* the debtor's property to be taken on legal process in section thirty-nine, is precisely the same as procuring it to be attached or seized on execution in section thirty-five. Indeed, the words *procure* and *suffer* are both used in section thirty-nine.

What, then, is the true meaning of that phrase in the act?

In both cases it must be accompanied with an intent. In section thirty-five it is to give a preference to a creditor; in section thirty-nine it must be to give a preference to a creditor, or to defeat or delay the operation of the Bankrupt Act. In both there must be the positive purpose of doing an act forbidden by that statute, and the thing described must be done in the promotion of this unlawful purpose.

The facts of the case before us do not show any positive or affirmative act of the debtors from which such intent may be inferred. Through the whole of the legal proceedings against them they remained perfectly passive. They owed a debt which they were unable to pay when it became due. The creditor sued them and recovered judgment, and levied execution on their property. They afforded him no facilities to do this, and they interposed no hindrance. It is not pretended that any positive evidence exists of a wish or design on their part to give this creditor a preference, or oppose or delay the operation of the Bankrupt Act.

There is nothing morally wrong in their course in this matter. They were sued for a just debt. They had no defence to it, and they made none. To have made an effort by dilatory or false pleas to delay a judgment in the State court would have been a moral wrong and a fraud upon the due administration of the law. There was no obligation on them to do this, either in law or in ethics. Any other creditor whose debt was due could have sued as well as this one, and any of them could have instituted compulsory bankrupt proceedings. The debtor neither hindered nor facilitated any one of them. How is it possible from this to infer, logically, an actual purpose to prefer one creditor to another, or to hinder or delay the operation of the Bankrupt Act?

It is said, however, that such an intent is a legal inference from such inaction by the debtor, necessary to the successful operation of the Bankrupt law; that the grand feature of that law is to secure equality of distribution among creditors in all cases of insolvency; and that, to secure this, it is the legal duty of the insolvent, when sued by one creditor in an

ordinary proceeding likely to end in judgment and seizure of property, to file himself a petition of voluntary bankruptcy, and that this duty is one to be inferred from the spirit of the law, and is essential to its successful operation.

The argument is not without force, and has received the assent of a large number of the district judges, to whom the administration of the Bankrupt law is more immediately confided.

We are, nevertheless, not satisfied of its soundness.

We have already said that there is no moral obligation on the part of the insolvent to do this, unless the statute requires it, and then only because it is a duty imposed by the law. It is equally clear that there is no such duty imposed by that act in express terms. It is, therefore, an argument solely of implication. This implication is said to arise from the supposed purpose of the statute to secure equality of distribution in *all cases* of insolvency, and to make the argument complete, it is further necessary to hold that this can only be done in bankruptcy proceedings under that statute. Does the statute justify so broad a proposition? Does it in effect forbid all proceedings to collect debts in cases of insolvency, in other courts, and in all other modes than by bankruptcy? We do not think that its purpose of securing equality of distribution is designed to be carried so far.

As before remarked, the voluntary clause is wholly voluntary. No intimation is given that the bankrupt *must* file a petition under any circumstances. While his *right* to do so is without any other limit than his own sworn averment that he is unable to pay all his debts, there is not a word from which we can infer any legal obligation on him to do so. Such an obligation would take from the right the character of a privilege, and confer on it that of a burdensome and, often, ruinous duty.

It is, in its essence, involuntary bankruptcy. But the initiation in this kind of bankruptcy is, by the statute, given to the creditor, and is not imposed on the debtor. And it is only given to the creditor in a limited class of cases. The argument we are combating goes upon the hypothesis that

there is another class given to the creditor by inference, namely, where the debtor ought himself to go into court as a bankrupt and fails to do it. We do not see the soundness of this implication from anything in the statute.

We do not construe the act as intended to cover *all* cases of insolvency, to the exclusion of other judicial proceedings. It is very liberal in the classes of insolvents which it does include, and needs no extension in this direction by implication. But it still leaves, in a great majority of cases, parties who are really insolvent, to the chances that their energy, care, and prudence in business may enable them finally to recover without disastrous failure or positive bankruptcy. All experience shows both the wisdom and justice of this policy.

Many find themselves with ample means, good credit, large business, technically insolvent; that is, unable to meet their current obligations as fast as they mature. But by forbearance of creditors, by meeting only such debts as are pressed, and even by the submission of some of their property to be seized on execution, they are finally able to pay all, and to save their commercial character and much of their property. If creditors are not satisfied with this, and the parties have committed an act of bankruptcy, any creditor can institute proceedings in a bankrupt court. But until this is done, their honest struggle to meet their debts and to avoid the breaking up of all their business is not, of itself, to be construed into an act of bankruptcy, or a fraud upon the act.

It is also argued, that inasmuch as to lay by and permit one creditor to obtain judgment and levy on property necessarily gives that creditor a preference, the debtor must be supposed to intend that which he knows will follow.

The general legal proposition is true, that where a person does a positive act, the consequences of which he knows beforehand, that he must be held to intend those consequences. But it cannot be inferred that a man intends, in the sense of desiring, promoting, or procuring it, a result of other persons' acts, when he contributes nothing to their success or

completion, and is under no legal or moral obligation to hinder or prevent them.

Argument confirmatory of these views may be seen in the fact that all the other acts or modes of preference of creditors found in both the sections we have mentioned, in direct context with the one under consideration, are of a positive and affirmative character, and are evidences of an active desire or wish to prefer one creditor to others. Why, then, should a passive indifference and inaction, where no action is required by positive law or good morals, be construed into such a preference as the law forbids?

The construction thus contended for is, in our opinion, not justified by the words of either of the sections referred to, and can only be sustained by imputing to the general scope of the Bankrupt Act a harsh and illiberal purpose, at variance with its true spirit and with the policy which prompted its enactment.

Undoubtedly very slight evidence of an affirmative character of the existence of a desire to prefer one creditor, or of acts done with a view to secure such preference, might be sufficient to invalidate the whole transaction. Such evidence might be sufficient to leave the matter to a jury, or to support a decree, because the known existence of a motive to prefer or to defraud the Bankrupt Act would color acts or decisions otherwise of no significance. These cases must rest on their own circumstances. But the case before us is destitute of any evidence of the existence of such a motive, unless it is to be imputed as a conclusion of law from facts which we do not think raise such an implication.

These latter considerations serve to distinguish the present case from that of *Buchanan* v. *Smith*,* decided at the last term, and which may seem to conflict, in some of the expressions used in that opinion, with those found in this. That was a bill in chancery involving several distinct issues of fact, on which much and conflicting testimony was given, and the contention was mainly as to what was established by the

---

* 16 Wallace, 277.

evidence. There was satisfactory proof that the creditor, before pursuing his remedy in the State court, had urgently sought to secure a preference by obtaining from the debtor a transfer of certain policies of insurance on which a loss was due. The case was also complicated by an assignment made by the debtor, under which the assignee took possession before the creditor procured his judgment in the State court. That case was well decided on the evidence before the court. But in the case now before us the questions we have discussed are presented nakedly and without confusion, by facts found by the court and undisputed, and we have been compelled, on careful consideration of the Bankrupt Act, to the following conclusions:

1. That something more than passive non-resistance of an insolvent debtor to regular judicial proceedings, in which a judgment and levy on his property are obtained, when the debt is due and he is without just defence to the action, is necessary to show a preference of a creditor, or a purpose to defeat or delay the operation of the Bankrupt Act.

2. That the fact that the debtor under such circumstances does not file a petition in bankruptcy is not sufficient evidence of such preference or of intent to defeat the operation of the act.

3. That, though the judgment creditor in such case may know the insolvent condition of the debtor, his levy and seizure are not void under the circumstances, nor any violation of the Bankrupt law.

4. That a lien thus obtained by him will not be displaced by subsequent proceedings in bankruptcy against the debtor, though within four months of the filing of the petition.

These propositions require the questions certified to us to be answered as follows: The first and second in the NEGATIVE, and the third in the AFFIRMATIVE.