DARLING, Assignee, etc., *v.* TOWNSEND and others.

SAME *v.* WRIGHT and others.

*(District Court, S. D. New York.* December 30, 1880.)

1. BANKRUPTCY—OFFER TO ALLOW JUDGMENT—PREFERENCE—OTHER EXECUTIONS—ATTACKING ASSIGNEE'S TITLE COLLATERALLY.

Where a creditor's petition in bankruptcy was filed on the seventeenth of November, and on the thirteenth and fifteenth of November, before their time to answer expired, the bankrupts had offered to allow judgments to be entered against them pursuant to section 385 of the New York code of procedure, in suits commenced by the defendants by attachment, under which the sheriff had levied on the twenty-ninth of October, and judgments were immediately entered in accordance with the offers, and executions were levied on the goods and fixtures on which the attachment had been levied, and the sheriff also held the goods, etc., under executions in favor of other creditors, levied before the defendants' executions, but after their attachments were levied, and the defendants afterwards received on their executions the whole net proceeds of the sale on execution, the lien of their attachment giving them priority, under the laws of New York, over the earlier execution creditors, the property being in fact, and being understood by the debtors and by the defendants, to be of greater value than the amounts of said earlier judgments, and the defendants knowing at the time the offers to allow judgments were given that the debtors were insolvent, and that a proposition for a general assignment for the benefit of creditors had been made by them:

*Held,* that the giving of the offers to allow judgment, followed by the levy of the execution, was a procuring or suffering of their property to be seized on execution by the debtors within the meaning of the bankrupt law, and that the assignee was entitled to have the levies set aside as preferences and to recover of the defendants the value of the property. Whether the same could be held to be preferences, if the property levied on had been of no greater value than the amount of the earlier executions, *quære.*

Where the circumstances tend to show an intent to give and receive a preference, the failure to produce the testimony of the debtor, or of the alleged preferred creditor, as to the intent, *held,* strongly corroborative of the evidence of the intent to prefer.

Evidence offered as to irregularities by the petitioning creditors in instituting and carrying on involuntary proceedings in bankruptcy, and that the person afterwards made assignee in bankruptcy participated therein, *held* immaterial, in a suit by the assignee to recover property transferred as a preference.

In Bankruptcy.

*M. Devine,* for plaintiff.

*W. A. Butler,* for defendants.

CHOATE, D. J. These are suits in equity brought by the assignee in bankruptcy of Ferris, Mahoney & Co. to recover the value of certain property belonging to the bankrupts before the filing of the creditors' petition, on which the defendants levied their executions within two days before the commencement of the bankruptcy proceedings, and out of which their debts have been in part satisfied by the application thereto of the proceeds of the sale of the goods by the sheriff under execution. These defendants obtained attachments against the property of the bankrupts in suits brought on their claims, and on the twenty-ninth of October, 1869, the sheriff levied said attachments on the bankrupts' stock of goods, and the fixtures in their store. The suits were in the superior court of the city of New York, and the supreme court of the state of New York, and the bankrupts, the defendants therein, had until the eighteenth day of November to answer, so that until that day no judgment could be taken against them by default. But on the thirteenth and fifteenth of November the bankrupts gave written offers to allow judgment to be entered pursuant to the provisions of the New York Code then in force, (section 385;) in one case for the exact amount of the claim, with costs, and in the other case for an amount slightly in excess of the claim, with costs. Judgments were immediately entered in accordance with the offers; that of Townsend & Co., entered November 13th, being for $1,089.44, and that of Wright & Co., entered November 15th, for $806.86. On the fifteenth and sixteenth of November executions were issued on these judgments to the sheriff, who thereupon levied on the goods and fixtures already held by him under the attachments. On the third of November another creditor of the bankrupts, who had sued them in the marine court of the city of New York, and obtained judgments, issued his executions to the sheriff for $490.99; and on the tenth of November other creditors who had recovered judgments issued their executions for $1,628.25; and from the time of receiving these executions the sheriff held the goods

and fixtures as well under the levy of all these executions as under the levy of the defendants' attachments. These executions, prior in time to those of the defendants, were in the aggregate for $2,116.24. Under one or more of these earlier executions the sheriff had given the six days' notice of the sale of the property required by the laws of New York, and on the seventeenth day of November, the same day on which the creditors' petition for the adjudication of the bankrupts was filed, the sheriff sold the property at auction. The gross proceeds of the sale were $2,263.61. His fees and charges were $481.62, leaving $1,781.99 to be applied upon the executions. Under the laws of New York, the defendants, by reason of their earlier attachment, were entitled to payment in preference to the creditors who had the earlier judgments and executions; and these defendants have received from the sheriff the whole net proceeds of sale, Wright & Co. being paid in full, and Townsend & Co. in part only. The evidence is clear that at the time of the giving of the offers to allow judgment by the defendants they were insolvent, and well known by the defendants to be so. The defendants had, indeed, previously been conferred with by other creditors in respect to a proposed general assignment by the bankrupts for the equal benefit of all their creditors, which appears to have fallen through only because these defendants, though willing to release their attachments for the purpose, demanded, as a condition thereof, payment of the expenses of their suits, which none of the other parties were found willing to pay. This very proposition to make a general assignment is satisfactory proof of the contemplation of bankruptcy, and the facts admit of no conclusion except that the bankrupts' situation as understood by the defendants, was such as to render the seizure of the property under the defendants' executions a preference, if it was within the meaning of the bankrupt act, procured to be made by the bankrupts, and made with intent to give and receive a preference. It is admitted by the plaintiff that mere non-resistance on the part of the debtor to the prosecution, and enforcement of legal remedies by the creditors upon an unquestionable claim, is not

the suffering or procuring of his property to be seized within the meaning of the act. *Wilson* v. *City Bank*, 17 Wall. 473. But this was not a case of mere non-resistance. The debtors took active measures to hasten the seizure, and the perfecting of the inchoate lien which the defendants had acquired by their attachments, and which, being within four months, would have been vacated by the filing of the bankruptcy petition before issue of execution, if afterwards followed up by the appointment of an assignee; and the obvious intention of the debtors to enable the creditors to hasten the perfecting of their lien was actually carried into effect, since, by reason alone of these offers to allow judgments to be entered, the defendants were enabled, before the filing of the creditors' petition, to make the inchoate and contingent lien of their attachment absolute by the levy of their executions. I should have no hesitation, therefore, but for the complications growing out of the earlier executions, and their possible effect in furnishing a different motive for the offers of judgment, in concluding that the intent to give and to receive a preference was, upon the evidence, the only probable motive for the act. It is argued, however, that the circumstances under which the act was done do show a different motive. It is argued that the property was already lost irrevocably to the estate by reason of its being held under levy of the prior executions, which neither the bankrupts nor their assignee could impeach; that the property being already under advertisement for sale by the sheriff under those executions, the only effect of the offers of judgment, and the hastening of the levy of the defendants' executions, was possibly to avoid the expense of two sales on execution instead of one, or to enable the sheriff to sell under all the executions at once; that the only question was to which of the execution creditors the proceeds should go; that at the utmost the intent was to give these defendants a preference over the earlier execution creditors, who would get the proceeds of the property if these defendants did not, and not over the creditors generally, who in no event could receive it. The question thus presented is a serious and important

one, and if the value of the property held under the attach-
ments and executions were of no greater value than the
amount of the earlier executions, and was at the time
understood by the debtors and these defendants to be of
no greater value than that amount, there would be great
force in the argument, and it would be necessary to examine
with care the propositions of fact and of law on which it is
based. The property at the sheriff's sale brought but little
more than the amount of those earlier executions. The net
proceeds were less than that amount. But I am satisfied by
the testimony that the property was in fact worth more than
enough to satisfy those executions, and must have been so
considered both by the debtors and by these defendants. In
their answers, which were, of course, after the sale, the de-
fendants say that the value of the goods did not exceed
$2,500. They sold for $1,571.34, exclusive of some sewing
machines, which appear to have been classed as fixtures.
They say nothing of the value of the fixtures, which ,including
the sewing machines, sold for $692.27. It may very properly
be assumed that the defendants would not, in their answers,
give values at all above what they understood the property to
be worth at the time of the offers for judgment. The testi-
mony of the witnesses also shows that the value of the
goods considerably exceeded what they brought; and, al-
though they were goods whose value, as understood by the
parties, ought, perhaps, to be considered as subject to diminu-
tion by the effect of a forced sale at auction under execution,
yet, even making all due allowance for this consideration, I
am satisfied that the parties understood and supposed that
they would bring more than enough to satisfy the earlier exe-
cutions, and that an intent to give and receive a preference
over the creditors generally was at least part of the purpose
with which the offers of judgment were made, and therefore
that the plaintiff is entitled to recover. Although the de-
fendants and the bankrupts would have been competent wit-
nesses on the question of the actual intent with which the
offers were made and received, they were not examined on

that point. This omission raises a strong inference against the defendants that they could not testify to any other intent or purpose than the intent to take a preference.

The defendants have introduced evidence for the purpose of showing that there were irregularities and improprieties on the part of other creditors in instituting and carrying on the bankruptcy proceeding, and that the plaintiff, who was in the employment of one of these creditors, participated in these irregularities and improprieties. The evidence is wholly immaterial. Neither the adjudication nor the title of the assignee, who is merely the officer of the court and the representative of all the creditors, can be collaterally attacked in this way, and the matters referred to have no bearing on the question of the alleged preference.

Decrees for the plaintiff, with costs, and reference to take an account.