BALFOUR, Assignee, etc., *v.* WHEELER and others.[1]

*(Circuit Court, S. D. New York.   January 4, 1884.)*

1. BANKRUPT ACT—INSOLVENT DEBTOR SUFFERING HIS PROPERTY TO BE SEIZED.
    Where the bankrupt act provides that if an insolvent debtor suffers or procures his property to be seized on execution within two months before the filing of the petition against him, the assignee in bankruptcy can set aside the preference obtained by the creditor in whose favor the execution issues, it seems that a mere failure by the bankrupt to avail himself of the bankrupt act, in order to prevent a creditor from acquiring a judgment lien, will render any preference so obtained voidable, at the option of the assignee; but whether this be true or not, any circumstances showing the existence, within the stated time, of an active desire upon the bankrupt's part to give such preference, will be sufficient to vitiate the judgment lien. Such circumstances are the confidential relations between the parties, their co-operation for each other's benefit, the secrecy of their transactions, and the continued enjoyment of the property by the bankrupt after the seizure.
2. SAME—WARRANT TO CONFESS JUDGMENT—EXERCISE NOT THE DEBTOR'S ACT.
    A warrant of attorney to confess judgment speaks from the time it is given, and not from the time it is exercised. Accordingly, the entering of judgment in pursuance of such a power, within two months before the filing of a creditor's petition, is not an act of the bankrupt, within the provision of the statute.

In Equity.
*Roscoe Conkling* and *James Crombie,* for appellants.
*Chas. Stewart Davison* and *Willey, Sherman & Hoyt,* for appellee.

WALLACE, J.   The appellants seek to reverse a decree of the United States district court for the Southern district of New York, declaring the seizure and sale by them of a stock of merchandise belonging to one Benton, upon an execution in their favor against Benton, void as against Benton's assignee in bankruptcy. August 1, 1877, at Cleveland, Ohio, Benton executed and delivered to the appellants, a *cognovit* note for the sum of $9,566, payable in two months, which, under the laws of Ohio, authorized them at any time after the maturity of

[1] *Vide* 15 FED. REP. 229.

the note to enter a judgment for the amount and costs against Benton. June 7, 1878, the appellants caused a judgment to be entered on this note, and an execution to be issued and levied upon Benton's personal property, and 18 days thereafter such property was sold, and purchased by the appellants. July 19, 1878, the creditors of Benton filed a petition against him for an adjudication of bankruptcy, and thereafter he was adjudged a bankrupt, and complainant was appointed his assignee in bankruptcy, and received an assignment of the bankrupt's estate.

It is perfectly plain, upon the proofs, that Benton and the appellants sustained intimate confidential relations towards each other from a time considerably anterior to the making of the *cognovit* note down to the time of Benton's bankruptcy, and that they not only knew his financial situation, but they were his advisers, and he was their willing instrument during all this period. The proofs show satisfactorily that Benton was in contemplation of insolvency when he made the *cognovit* note; that he made it with a view to give a preference to the appellants, by means of a judgment and execution, over his other creditors, whenever, after its maturity, the appellants might choose to proceed; that he continued to be in contemplation of insolvency from the time he made the note until he was adjudged a bankrupt; that when they took the note, and from that time until they seized Benton's property upon the execution, the appellants had reasonable cause to believe Benton to be insolvent, and knew that if they seized his property upon execution they would obtain a preference over his other creditors; and they also knew that he intended to suffer them to seize his property in order that they might obtain such a preference. Upon this state of facts, the only question which the case presents is whether the bankrupt procured or suffered his property to be seized on the execution within two months of the filing of the petition in bankruptcy against him. Unless he did, one of the conditions precedent to the right of the assignee in bankruptcy to set aside the preference does not exist. The *cognovit* note was made 11 months before the petition in bankruptcy was filed. Although it gave a continuing authority to enter the judgment and issue the execution, the authority was given when the note was given, and not when the judgment was entered. It was the opinion of the learned district judge in the court below that the authority speaks from the time it is carried into effect, so as to constitute a procuring of the seizure of the bankrupt's property at the time. This conclusion cannot be reconciled with the explicit declaration of the supreme court in *Clark* v. *Iselin*, 21 Wall. 375. In that case, the court, speaking through Mr. Justice STRONG, say:

"It is true the judgment is entered by virtue of his (the debtor's) authority, given when the confession is made. That may have been years before, or if not, it may have been when the debtor was perfectly solvent. But no consent is given when the entry is made, when the confession becomes an actual

judgment, and when the preference, if it be a preference, is obtained. The debtor has nothing to do with the entry. As to that he is entirely passive. Ordinarily, he knows nothing of it, and he could not prevent it if he would. It is impossible, therefore, to maintain that such a judgment is obtained by him when his confession is placed on record."

It does not follow, however, that the assignee cannot successfully assail the preference, because the confession of judgment was made by Benton more than two months before the filing of the petition in bankruptcy against him. Although the confession was authorized by Benton at that time, the preference was not obtained until his property was seized upon the execution; and if within the two months he suffered or procured his property to be so seized, the decree of the district court should be affirmed. He may have done all on his part that was necessary to enable the appellants to obtain an illegal preference before the two months began to run, but he may also have facilitated the seizure within the two months; and if this is the case, and he was then insolvent, and intended to give them a preference, and they knew his intent, all the conditions are satisfied which must co-exist to enable the assignee to set aside the preference. If it is necessary to find upon the evidence that he procured the seizure of his property within the two months, that conclusion may be reached without serious difficulty by applying the rule announced in *Wilson* v. *City Bank*, 17 Wall. 473. That was a case where a creditor had recovered a judgment by default in an adverse suit brought against the judgment debtor, and the latter being insolvent at the time, and having committed an act of bankruptcy, to the knowledge of the creditor, and not having taken any steps to defeat the levying of an execution, the question was, whether the levy was invalid as against an assignee. It was held that something more than passive non-resistance on the part of the debtor was necessary to show that he had procured the seizure of his property, but it was also declared that very slight circumstances tending to show the existence of an affirmative desire on the part of an insolvent debtor to give a preference may, by giving color to the whole transaction, render the lien void. The circumstances in the present case are not slight, but are cogent to imply the existence of an affirmative desire on the part of Benton to prefer the appellants from the time the *cognovit* note was made to the time when his property was sold on the execution. As has been stated, it was his original purpose to permit the appellants to obtain a preference at the exigent moment. As early as in January, 1877, they were his confidential creditors, holding a secret security for their debt in the hands of one Ingersoll, an attorney at Cleveland, who had been Benton's friend and attorney for many years. Benton was then financially embarrassed, but the appellants were willing to assist him in obtaining an extension from his creditors. While negotiations for an extension were being had with his creditors, Benton was consulting Ingersoll, at the appellant's suggestion, in their interests. In Feb-

ruary an extension of 18 months was effected, by the terms of which Benton was to pay monthly installments to his creditors, and the appellants released their security. After one installment had been paid to the appellants, and in July, 1877, they consented that he might omit paying to them, but might continue paying the other creditors. The correspondence between Benton and the appellants shows that at this time there was a perfect understanding between them that the appellants should be secure in any contingency. It was to carry out this understanding that the *cognovit* note was placed by Benton in Ingersoll's hands on the first day of August. The existence of this note was not divulged, and Benton kept on in business, buying of his other creditors as before, on credit as before, but receiving goods of the appellants only on commission, until the June following, when his affairs became critical, and Ingersoll caused judgment to be entered on the *cognovit*, and execution to be levied on his stock of goods. Four days thereafter Benton signed a consent for a private sale of the goods. The whole stock was bought in by Ingersoll for the appellants at a price somewhat below the amount of the execution, and Benton was placed in charge, and continued the business as their agent. All the *indicia* which characterizes a transfer by an insolvent debtor to a favored creditor are present in this transaction. They are as well defined at the final consummation of the proceeding as at its inception. The confidential relations between the parties; their co-operation for each other's benefit; the selection of an attorney who was in the confidence of both parties; the secrecy when secrecy was expedient, and the promptitude when secrecy was no longer possible; the private sale; and the subsequent continued possession of the property by the former owner, are circumstances too significant to leave any room for a doubt that there was a perfect understanding between the parties to the sale, from the beginning to the end.

It is doubtful whether the role of passive non-resistance on the part of an insolvent debtor, when he knows that an execution is about to be levied upon the property which will absorb the whole of it, for the benefit of the judgment creditor, and leave his other creditors unpaid, is any longer sufficient for the protection of such a creditor. Before the decision in *Wilson* v. *City Bank*, it had been decided in *Buchanan* v. *Smith*, 16 Wall. 277, that under such circumstances a debtor suffers or procures his property to be seized on execution by omitting to invoke the shield of the bankrupt act. When that case and the case of *Wilson* v. *City Bank* were decided, the thirty-fifth section of the bankrupt act, which declared what preferences should be void, used the word "procures" to define the nature of the debtor's co-operation in the seizure of his property on execution. It is needless to say that *Wilson* v. *City Bank*, following so closely on the heels of *Buchanan* v. *Smith*, and holding that mere passive non-resistance was not a procuring on the part of the debtor, was a surprise to a large number of the judges and of the legal profession who were actively engaged in

the administration of the bankrupt law, but the doctrine was reaffirmed in *Clark* v. *Iselin,* and *Watson* v. *Taylor,* 21 Wall. 360, 378. After these decisions congress amended the thirty-fifth section by inserting the words "suffer or" before "procure," so that by the section as amended it is no longer necessary that the debtor should procure his property to be seized on execution, but it suffices if he suffers or procures it to be done. It is not a violent supposition that this change had immediate reference to these decisions, and was intended to rehabilitate the law as it existed in general understanding before the decision of *Wilson* v. *City Bank,* and as it had been unequivocally declared to be in *Buchanan* v. *Smith.* It is true that in these decisions the thirty-fifth section and the thirty-ninth section of the act, which defined what acts were acts of bankruptcy, were considered together, and it was said in *Wilson* v. *City Bank,* 483, that "it is very strongly to be inferred that the act of suffering the debtor's property to be taken on legal process, in section thirty-nine, is precisely the same as procuring *it to be* attached or seized on execution in section thirty-five." But whether the change was made in consequence of these decisions or not, some effect must be given to the amendment. It is not to be assumed that the word "suffer" was inserted inadvertently or uselessly. No possible reason for the introduction of the word can be imagined, unless it was for the purpose of qualifying the pre-existing law; and no effect can be given to it except to relax the necessity of proving an active co-operation on the part of the debtor in the seizure of his property. As "slight circumstances tending to show an affirmative desire" were deemed sufficient to prove a procuring in *Wilson* v. *City Bank,* something less than this must be sufficient now. It was perfectly well known that under the decision in that case and the subsequent cases, the common expedient for defeating the provisions of the bankrupt act relating to preferential transfers of property, was the obtaining of judgments and executions by confidential creditors against tranquil and submissive debtors. In a large number of instances no proof of slight circumstances or affirmative desire could be procured, and, as a result, the paramount object of the law to secure an equal distribution of the debtor's property among all his creditors was nullified.

It is not necessary, for the decision of the present case, to consider whether it is necessary for the debtor to invoke the protection of the bankrupt law when he knows that unless he does so a creditor who is about to seize his property will obtain a preference. It is reasonable to hold, however, that it is no longer necessary to prove any active co-operation on the part of the debtor when the other conditions of an alleged preference are found to exist.

The decree of the district court is affirmed.