In re WILMINGTON HOSIERY CO.

(District Court, D. Delaware. January 20, 1903.)

No. 71.

1. BANKRUPTCY—ACTS OF BANKRUPTCY—CORPORATION.

Where an insolvent corporation, against which a bill was filed alleging its insolvency and praying the appointment of a receiver, made answer admitting its insolvency, and a receiver was thereupon appointed who took possession of its property, the corporation did not thereby permit its property to be removed, with intent to hinder or delay its creditors, or any of them, within the meaning of section 3a (1) of the bankruptcy act [U. S. Comp. St. 1901, p. 3422].

2. SAME—SCOPE OF ACT.

The bankruptcy act was not intended to cover all cases of insolvency to the exclusion of judicial proceedings in state courts affecting the property of the insolvent, but only such cases as are within its provisions.

3. SAME—ACTS OF BANKRUPTCY—REMOVAL OF PROPERTY.

The word "removed" as employed in section 3a (1), whether taken by itself or viewed in the light of the context, signifies an actual or physical change in the position or locality of the property constituting the subject of the removal. It is an inapt expression for the taking possession of property by a receiver under competent authority.

4. SAME.

One does not permit a removal of property within the meaning of section 3a (1) who has neither power nor right to prevent its removal.

5. SAME—INTENT TO HINDER OR DELAY CREDITORS.

Section 3a (1) requires an actual intent to hinder, delay or defraud creditors, and such actual intent will be presumed when one does an act which he knows will produce that result. But an actual intent, whether directly shown or established by presumption, must exist.

---

¶ 4. See Bankruptcy, vol. 6, Cent. Dig. § 82.

**6. SAME.**

An intent to hinder or delay creditors involves a purpose wrongfully or unjustifiably to prevent, obstruct, embarrass, or postpone them in the collection or enforcement of their claims.

**7. SAME.**

The bankruptcy act nowhere denounces a mere intent on the part of an insolvent debtor not to become a bankrupt. Nor does section 3a (1) provide that the commission or permission of any of the acts therein specified with intent not to become bankrupt shall constitute an act of bankruptcy. While such an intent involves a purpose that the debtor's property shall not be distributed under the provisions of the act and that his creditors shall not enjoy its benefits, it is not in all cases equivalent to an "intent to hinder, delay, or defraud his creditors, or any of them" within the meaning of subdivision (1).

(Syllabus by the Court.)

In Bankruptcy.

Charles M. Curtis, for petitioning creditors.

Tilghman Johnston and William S. Hilles, for Wilmington Hosiery Co.

BRADFORD, District Judge. Pursuant to leave heretofore granted in this case the petitioning creditors have submitted a proposed amendment to their petition and ask that it be allowed. It contains the following averments:

"That the said Wilmington Hosiery Company by its President by authority of a resolution unanimously adopted at a meeting of the stockholders of said company, all of the stockholders of said company being present, held on August 28th, A. D. 1902, as well as authority of a resolution unanimously adopted at a meeting of the directors of said company, all the directors being then present, held on August 28th, 1902, made and filed on the twenty-eighth day of August, A. D. 1902, an answer to the bill filed in the Court of Chancery of the State of Delaware in and for New Castle County by Alfred D. Warner, a creditor and stockholder of said company, against the said company, alleging in said bill the insolvency of said company and praying for the appointment of receiver for said company, and in and by said answer admitted the facts therein set forth to be true and thereby and by submitting without objection to the jurisdiction of said Court of Chancery to take possession of the business of said corporation and wind up its affairs for the benefit of the creditors of said corporation, committed a fraud upon an act of the Congress of the United States entitled 'An Act to Establish a Uniform System of Bankruptcy throughout the United States,' approved July 1st, 1898, and also thereby committed sundry acts of bankruptcy.

First. The said corporation conveyed, transferred and removed and permitted to be removed property of the said company to receiver appointed by the Court of Chancery of the State of Delaware in the cause above mentioned, with intent on the part of the said corporation, its stockholders and officers, to hinder and delay the creditors of said company in the collection of their claims against said company.

Second. The said company thereby admitted in writing inability of said company to pay its debts and its willingness to be adjudged a bankrupt on that ground."

This court has heretofore decided that the company did not admit in writing inability to pay its debts and willingness on its part to be adjudged bankrupt. The correctness of this holding is now conceded on the part of the petitioning creditors and it is unnecessary further to allude to what is designated the second act of bankruptcy.

During the course of the argument the controversy narrowed down to the contention that the petition if amended as sought would show that the company permitted its property to be removed with intent to hinder and delay its creditors within the true meaning of section 3a (1) of the bankruptcy act [U. S. Comp. St. 1901, p. 3422]' which provides that

"Acts of bankruptcy by a person shall consist of his having (1) conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay, or defraud his creditors, or any of them."

It is admitted that no act of bankruptcy under any subsequent subdivision of section 3 would be disclosed by the allowance of the proposed amendment, and further, that it would not show that the company conveyed, transferred, concealed or removed any of its property, or permitted it to be concealed. Nor is there any allegation in such amendment of an intent on the part of the company to defraud its creditors or any of them. The sole contention is, as above stated, that the company would be shown to have permitted its property to be removed with intent to hinder and delay its creditors. Unless removal with such intent would appear no act of bankruptcy would be charged. The word "removed" as employed in subdivision (1), whether taken by itself or viewed in the light of the context, clearly signifies an actual or physical change in the position or locality of the property constituting the subject of the removal. This case does not involve the consideration of any removal of mere evidences of property. It nowhere appears in the proposed amendment that the property of the company or any part of it was in fact removed. No removal is disclosed by the certified copy of the proceedings in the Court of Chancery annexed to the petition. Those proceedings, as certified, show the appointment of a receiver with the usual powers, but not any removal of the property of the company "to receiver appointed by the Court of Chancery" or any other removal thereof. The proposed amendment, it is true, sets forth that the company in its answer in the Court of Chancery admitted its insolvency and by submitting without objection to the jurisdiction of that court "committed a fraud" upon the bankruptcy act and "thereby committed sundry acts of bankruptcy" including what is now relied on by the petitioning creditors as constituting an act of bankruptcy, namely, that the company permitted its property to be removed and a receiver to be appointed with intent to hinder and delay its creditors. There is no positive, direct averment that property was so removed. Its removal has been deduced as a conclusion of law from the precedent allegations in the proposed amendment. There is no substantive allegation of it as a fact. Doubtless the receiver did take possession of the property of the company, and were the fact under the circumstances important, it could be shown by a proper amendment. It may be seriously questioned whether the term "removed" has legitimate application to the taking possession of the property by a receiver under the circumstances disclosed. In the case of In re Baker-Ricketson Co. (D. C.) 97 Fed. 489, Judge Lowell, speaking of subdivision (1), said:

"The provision concerning permission applies only to concealment and removal. That a receivership is the concealment, secretion, falsification, or mutilation of property (see section 1, cl. 22 [U. S. Comp. St. 1901, p. 3418]) the petitioners do not contend. They have not shown that in this case the receiver has removed anything, and the phrase 'removal of property' is a totally inapt definition or description of ordinary receivership proceedings. Moreover, the phrase is not a new one, and its meaning may be judged from its use in other bankrupt cases."

But I am unwilling to rest the decision of this case solely on this ground. To sustain the petition as sought to be amended it should appear not only that there was a removal of property of the company, but that the company "permitted" such removal with intent to hinder or delay its creditors "in the collection of their claims against said company." It is necessary that the company should have "permitted" with the specified intent, and that such intent was the concomitant of such permission. The statute under which the receiver was appointed is the act of March 25, 1891 (chapter 181, vol. 19 Laws Del.). It is as follows:

"That whenever a corporation shall be insolvent, the Chancellor, on the application and for the benefit of any creditor or stockholder thereof, may, at any time, in his discretion, appoint one or more persons to be receivers of and for such corporation, to take charge of the estate, effects, business and affairs thereof, and to collect the outstanding debts, claims, and property due and belonging to the company, with power to prosecute and defend, in the name of the corporation or otherwise, all claims or suits, to appoint an agent or agents under them, and to do all other acts which might be done by such corporation and may be necessary and proper; the powers of such receivers to be such and continued so long as the Chancellor shall think necessary: provided, however, that the provisions of this act shall not apply to corporations for public improvement."

The Wilmington Hosiery Company, not being a corporation for public improvement, came within the provisions of the act. Under the settled construction of this statute the Chancellor, unless the bankruptcy act has suspended its operation, has on proper application power through a receiver or receivers appointed by him to take charge and possession of the affairs and property of an insolvent corporation, and for the protection and benefit of creditors or stockholders, or both, either temporarily or fully administer the same. In case of full administration the assets of the corporation are distributed among the creditors and, should a surplus from any cause exist, among the stockholders, in accordance with the principles of equity. While valid existing liens or priorities are recognized and enforced, the institution of proceedings under the statute does not create or result in the creation of a preference of any kind. It is contended on the part of the petitioning creditors that the company by filing an answer in the Court of Chancery admitting its insolvency as charged in the bill and submitting itself to the jurisdiction of that court "permitted" its property to be removed. This contention cannot be sustained. The company, as a defendant, was obliged, if the state statute was operative, to make answer to the allegation of its insolvency. It is not denied that it was insolvent, nor can its insolvency, as against the copy of the record made part of the petition in bankruptcy, be disputed. Neither law nor morals required the company falsely to aver solvency which did not exist. In Wilson v. City Bank, 17 Wall.

473, 21 L. Ed. 723, Mr. Justice Miller, in discussing the omission by certain defendants to resort to dilatory and false pleas in an action brought against them in a state court, said:

"There is nothing morally wrong in their course in this matter. They were sued for a just debt. They had no defence to it and they made none. To have made an effort by dilatory or false pleas to delay a judgment in the State court would have been a moral wrong and a fraud upon the due administration of the law. There was no obligation on them to do this, either in law or in ethics."

Having made true answer, the appointment of a receiver was a consequence which could not have been prevented by the company. Being a corporation, it was not entitled to file a petition in voluntary bankruptcy. And it is inadmissible to assume that it was the duty of the company in order to defeat or affect the proceedings in chancery to commit an act of bankruptcy, which might or might not have induced its creditors or some of them to proceed in bankruptcy against it. The word "permitted," as employed in subdivision (1) of section 3 [U. S. Comp. St. 1901, p. 3422], is by no means synonymous with the word "suffered" in subdivision (3) of the same section. One does not permit a removal of property within the meaning of the former provision who has neither power nor right to prevent its removal. Such was the situation of the company. One of the essential elements of an act of bankruptcy under subdivision (1) is therefore lacking. It is further urged that submission by the company to the jurisdiction of the Court of Chancery involved an intent to hinder and delay its creditors "in the collection of their claims against said company," and it is argued that this intent, drawn by counsel for the petitioning creditors as a conclusion of law from the proceedings in chancery, is equivalent to an intent on the part of the company to hinder and delay its creditors by depriving them of the benefits of the bankruptcy act. As before stated, an intent to hinder, delay or defraud creditors is, under subdivision (1), a necessary concomitant of permission to remove property. The bankruptcy act does not define the meaning of the phrase "hinder, delay, or defraud his creditors." It nowhere denounces a mere intent on the part of an insolvent debtor not to become a bankrupt. Nor does subdivision (1) provide that the commission or permission of any of the acts therein specified with intent not to become a bankrupt shall constitute an act of bankruptcy. While such an intent involves a purpose that the debtor's property shall not be distributed under the provisions of the act and that his creditors shall not enjoy its benefits, it is not in all cases equivalent to an "intent to hinder, delay, or defraud his creditors, or any of them," within the meaning of the subdivision in question. In Wilson v. Bank, supra, Mr. Justice Miller employed language, equally applicable here, as follows:

"We do not construe the act as intended to cover all cases of insolvency, to the exclusion of other judicial proceedings. It is very liberal in the classes of insolvents which it does include, and needs no extension in this direction by implication. But it still leaves, in a great majority of cases, parties who are really insolvent, to the chances that their energy, care, and prudence in business may enable them finally to recover without disastrous failure or positive bankruptcy. All experience shows both the wisdom and justice of this policy."

Subdivision (1) requires an actual intent to hinder, delay or defraud creditors, and such intent will be presumed when one does an act which he knows will produce that result. But an actual intent, whether directly shown, or established by presumption, must exist. The terms of the provision read in their common and natural sense leave no substantial doubt on this point. This conclusion receives additional support from the fact that subdivision (1) does not require that the debtor shall be insolvent when committing or permitting any of the acts therein enumerated. Section 3c [U. S. Comp. St. 1901, p. 3422] provides that "it shall be a complete defense to any proceedings in bankruptcy instituted under the first subdivision of this section to allege and prove that the party proceeded against was not insolvent as defined in this Act at the time of the filing the petition against him, and if solvency at such date is proved by the alleged bankrupt the proceedings shall be dismissed," &c. But the requirement of insolvency is confined to the date of filing the petition, and the bankruptcy act nowhere requires the existence of insolvency at the time of the commission or permission of any of the acts denounced in subdivision (1). It is inadmissible to assume that the specified intent must be actual in one case, and, in another, may be only constructive. The clause should receive uniformity of construction. It would be unreasonable to hold that the required intent can be other than actual in the case of a debtor who was solvent at the time of committing or permitting any of the enumerated acts. If this be true, an actual intent on the part of an insolvent debtor is equally required. Not only must there be an actual intent, but that intent must be to hinder, delay or defraud creditors. An intent to hinder or delay creditors involves a purpose wrongfully or unjustifiably to prevent, obstruct, embarrass, or postpone them in the collection or enforcement of their claims. Aside from the bankruptcy act certainly no such intent can be imputed to the company. The proceedings in the Court of Chancery were instituted with a beneficent purpose, and calculated to secure a proper adjustment of the affairs of the company and a just and equitable distribution of its assets among its creditors. In Mayer v. Hellman, 91 U. S. 496, 23 L. Ed. 377, Mr. Justice Field, in discussing the validity of an assignment under the laws of Ohio for the benefit of creditors made more than six months before the institution of proceedings in bankruptcy, while recognizing that such an assignment, if made within that period, might be voidable under the provisions of the bankruptcy act of 1867, but without expressing an opinion on that point, said:

"Independently of the Bankrupt Act, there could be no serious question raised as to its legality. The power which every one possesses over his own property would justify any such disposition as did not interfere with the existing rights of others; and an equal distribution by a debtor of his property among his creditors, when unable to meet the demands of all in full, would be deemed not only a legal proceeding, but one entitled to commendation. Creditors have a right to call for the application of the property of their debtor to the satisfaction of their just demands; but, unless there are special circumstances giving priority of right to the demands of one creditor over another, the rule of equity would require the equal and ratable distribution of the debtor's property for the benefit of all of them. And so, whenever such

a disposition has been voluntarily made by the debtor, the courts in this country have uniformly expressed their approbation of the proceeding. The hindrance and delay to particular creditors, in their efforts to reach before others the property of the debtor, that may follow such a conveyance, are regarded as unavoidable incidents to a just and lawful act, which in no respect impair the validity of the transaction."

Nor can the company legitimately be charged with an intent to hinder or delay its creditors in the sense of merely depriving them of the benefits of the bankruptcy act. For, even on the assumption of the sufficiency of an allegation to that effect to supply the intent specified in subdivision (1) [U. S. Comp. St. 1901, p. 3422], the proposed amendment does not disclose an actual intent to deprive creditors of such benefits. As before stated, the company had no right to become a voluntary bankrupt. No proceeding in bankruptcy was pending against it at the time it filed its answer. It is not alleged that it had then committed. or contemplated the commission of any act of bankruptcy. Non constat that it would commit any such act or, if it should, that any of its creditors would proceed in bankruptcy against it. In fact, the proposed amendment does not contain any averment of an intent to deprive creditors of the benefits of the bankruptcy act. The allegation in it, deduced as a conclusion of law, and relied on by the petitioning creditors, is that the company permitted its property to be removed with intent to hinder and delay its creditors in the collection of their claims against it. I am unable to find on the facts as stated in the proposed amendment anything to warrant the deduction made by counsel of the intent claimed to have existed or any such intent as would meet the requirements of subdivision (1). Much of the argument on the part of the petitioning creditors was in support of the proposition that the Delaware statute is an insolvent law, and that its operation was suspended by the bankruptcy act. On this assumption it was claimed that it was the duty of the company to raise the question of jurisdiction in the Court of Chancery and that its omission so to do amounted to permission on its part that the receiver should take possession of and remove the property of the company. It is not necessary to the decision of this case that the correctness of the above assumption should be determined, and I refrain from expressing any opinion on the point; for even if the state statute were an insolvent law, and as such rendered dormant or inoperative by the bankruptcy act, the specific intent on the part of the company required by subdivision (1) would still be lacking.

My conclusion on the whole case is that an allowance of the proposed amendment would not cure the insufficiency of the petition as originally filed. I am not aware of any decision at variance with this conclusion. On the other hand, there are several cases which strongly support it. In re Baker-Ricketson Co. (D. C.) 97 Fed. 489; In re Harper & Bros. (D. C.) 100 Fed. 266; Vaccaro v. Bank, 43 C. C. A. 279, 103 Fed. 436; Davis v. Stevens (D. C.) 104 Fed. 235. In Vaccaro v. Bank, supra, it was held by the circuit court of appeals for the sixth circuit that failure by surviving partners of a dissolved partnership to contest the appointment of a receiver by a state court was not permitting their property to be concealed or removed with

intent to hinder, delay or defraud their creditors under subdivision (1). Judge Lurton, in delivering the opinion of the court, among other things, said:

"There is no evidence of collusion, fraud, or any other evil thing or purpose. * * * It would be an abuse of language and a confusion of ideas to hold that the passive conduct of the Vaccaros in respect to the bill seeking a receiver was a concealment or removal with intent to hinder, defraud, or delay creditors."

For the foregoing reasons leave to file the proposed amendment must be denied and the petition dismissed with costs.