Motion granted.

---

### In re ED. W. WRIGHT LUMBER CO.

(District Court, W. D. Arkansas, Texarkana Division. April 30, 1902.)

1. BANKRUPTCY—EXECUTION OF MORTGAGE.

A debtor who, knowing that he is insolvent, executes a deed of trust to secure a creditor on a pre-existing debt, commits an act of bankruptcy, within Bankr. Act, § 3a, par. 2, providing that acts of bankruptcy by a person shall consist of his having "transferred while insolvent any portion of his property to one or more creditors with intent to prefer such creditors over his other creditors," and this irrespective of whether the creditor knew, or had reasonable ground to know, that the bankrupt intended to prefer him.

2. SAME—PREFERENCES.

Bankr. Act, § 60a, provides that a person shall be deemed to have given a preference if, being insolvent, he has made a transfer of any of his property the enforcement of which will enable any creditor to obtain a greater percentage of his debt than other creditors of the same class. A bankrupt owed a bank $1,945, and claimant $940. The bank was threatening suit, and the bankrupt's father procured claimant to execute to the bank a demand note for the amount of the bankrupt's debt to it, and also two accommodation notes for $1,000 each, to enable the bankrupt to take a trip to recuperate his failing health. To secure the bank debt of $1,945, and his debt to claimant for $940, and the accommodation notes, the bankrupt executed a deed of trust on his property for claimant's benefit. *Held*, that claimant had received a preference, and would have to surrender the mortgage.

Intervention of A. L. Alphin for $1,945 as a preferred claim.

Snead & Powell, for A. L. Alphin.
T. E. Webber, for the trustee.

ROGERS, District Judge. Prior to November 13, 1901, Ed. W. Wright, doing business under the firm name of the Ed. W. Wright Lumber Company, was insolvent. The Eldorado Bank held a claim against him, in the form of overdrafts, for $1,945. He was also indebted to the claimant, A. L. Alphin (who was a stockholder and director in said bank), in the sum of $940, which had been past due for several months. The Eldorado Bank, through counsel, was vigorously pressing its claim for collection and threatening suit. Ed. W. Wright himself was in ill health, and his father had come to his rescue in order to manage the business of the company. Ed. W. Wright made out a pencil statement of his condition, showing his solvency, and placed it in the hands of his father, John C. Wright, and requested him to go to Eldorado and see Mr. A. L. Alphin, and see if he could get the money. (This statement shows the liabilities to be about $7,500, and assets $12,000, whereas the liabilities were over $14,000.) This the father did, and the result of this interview was that Mr. Alphin executed to the bank his demand note for the amount of Ed. W. Wright's indebtedness, and delivered to him his accommodation notes at 60 and 90 days for a thousand dollars, which Ed. W. Wright, it is stated, expected to use in making a trip to Hot Springs in the effort to recuperate his health. The 60 and 90 day notes were given because Alphin could not spare that amount of cash from his business at that time, being engaged in buying cotton. To secure the bank debt of $1,945, and his own debt of $940, and the thousand dollar notes, Ed. W. Wright executed a deed of trust to E. O. Mahoney, as trustee for A. L. Alphin, upon all his personal property. Before the transaction was entered into, Ed. W. Wright's father informed the claimant, Alphin, that his son owed the bank the $1,945, and that the Ruston Bank had a mortgage on the machinery of E. W. Wright for $2,500. The deed of trust from E. W. Wright to E. O. Mahoney, in trust for Alphin, shows that all the personal property described in the mortgage was already incumbered. This mortgage the claimant, Alphin, did not demand as security, but it was offered by the bankrupt through his father.

It is now insisted that neither the bank nor Alphin had reason to believe that Ed. W. Wright was insolvent. I cannot assent to this view of the testimony. It is not reasonable to ask the court to believe that Ed. W. Wright had no more knowledge of his business than to suppose that his indebtedness was only one-half of what it really was. It may be, and it is probable, that the father of the bankrupt did not know that he was insolvent. For the purposes of this case it is immaterial whether he did or not. He was the agent of his son, and the representations that he made to the claimant, Alphin, were made at the request of his son. The court is of opinion that the son knew that the statement his father made was not approximately correct. Indeed, it is shown by the proof, by the father of the bankrupt, that, if he had failed to get the money to pay off the Eldorado Bank from the claimant, Alphin, the mill would have been immediately shut down; so that it is not altogether clear, by any means, that the father of the bankrupt did not himself know that his son was in failing circumstances. The bankrupt knew of his insol-

vency, and executed this mortgage to secure the pre-existing indebtedness of the Eldorado Bank which had been assumed by the claimant, Alphin, and also the pre-existing indebtedness of Alphin himself. The execution of this mortgage was therefore an act of bankruptcy, being in direct violation of section 3a, par. **2**, of the bankrupt law, which is as follows:

"Sec. 3a. Acts of bankruptcy by a person shall consist of his having (1) conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay, or defraud his creditors, or any of them; or (2) transferred, while insolvent, any portions of his property to one or more of his creditors with intent to prefer such creditors over his other creditors. * * *"

If it be said that the testimony shows that the bankrupt did not intend to prefer claimant, the answer is that he was insolvent, and he knew it, and he must be held to have intended that which was the necessary consequence of his act. He cannot be heard to say that he did not intend to do a thing when the necessary and logical consequence of his act was to do that very thing. It is not necessary, therefore, in order that the execution of this mortgage be an act of bankruptcy, that the claimant, Alphin, knew, or had reasonable grounds to believe, when he accepted the mortgage, that the bankrupt intended to prefer him over other creditors. Section 60a of the bankrupt law is as follows:

"A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

The word "transfer" is defined in section **1**, par. **25**, as follows:

"Transfer shall include the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift or security."

That section of the bankrupt law (60a) has been twice construed by the supreme court of the United States. In Pirie v. Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, Mr. Justice McKenna made use of this language at page 444, 182 U. S., and page 908, 21 Sup. Ct., 45 L. Ed. 1171:

" 'Transfer' is defined to be not only the sale of property, but 'every other mode of disposing of or parting with property.' All technicality and narrowness of meaning is precluded. The word is used in its most comprehensive sense, and is intended to include every means and manner by which property can pass from the ownership and possession of another, and by which the result forbidden by the statute may be accomplished,—a preference enabling a creditor 'to obtain a greater percentage of his debt than any other creditors of the same class.' "

And this section (60a) was also construed in Wilson v. Nelson, 193 U. S. ——, 22 Sup. Ct. 74, 46 L. Ed. ——, 7 Am. Bankr. Rep. 142, in which Mr. Justice Gray discusses the proper construction of this statute, and discriminates between the bankrupt law of 1898 and the previous bankruptcy acts, and specifically holds that it is not necessary that the bankrupt should intend to give a preference; it is sufficient

if the effect of the enforcement of the transfer will be to enable any one of the bankrupt's creditors to obtain a greater percentage of his debt than any other of his creditors of the same class; and he expressly declines to follow Wilson v. Bank, 17 Wall. 473, 21 L. Ed. 723, Clark v. Iselin, 21 Wall. 360, 22 L. Ed. 568, and Bank v. Warren, 96 U. S. 539, 24 L. Ed. 640, which, in effect, held that intent to prefer was necessary under the bankrupt act of 1867, because, he says, they have no application under section 60a of the bankrupt act of 1898. It is clear to my mind, therefore, that the transaction between Alphin and Wright operated as a preference to Alphin, and that his claim cannot be probated against the estate until the preference is surrendered; that is to say, he must surrender his mortgage in order to become a general creditor.

The action of the referee in this case is affirmed, and an order will be entered to the effect that if the said A. L. Alphin shall surrender the deed of trust hereinbefore referred to within 10 days his claim be allowed for the full amount, $3,880.62, and if he refuse to surrender the mortgage within the time above specified his claim be disallowed in toto.