[No. 15266. Department One. May 31, 1919.]

SKOOKUM LUMBER COMPANY, *Respondent*, v. SACAJAWEA LUMBER & SHINGLE COMPANY, *Appellant.*[1]

CHATTEL MORTGAGES (61)—FORECLOSURE—INSECURITY OF DEBT—REASONABLE JUSTIFICATION. To entitle a chattel mortgagee to a foreclosure under the insecurity clause when he "deems" himself insecure, he must act in a reasonable manner; and it is no justification for premature suit that the mortgagor had sent away from the mill a few small items of no particular value not impairing the security, which had been greatly increased since giving the mortgage; nor that there was a breach of the warranty in the mortgage against incumbrance by the existence of two conditional sales contracts, known to the mortgagee when it made the loan; nor that the mortgagor was indebted on several outstanding obligations, where the mill had just been completed and when operated would show a net daily profit.

SAME (61). Upon an issue as to whether plaintiff acted reasonably in "deeming" himself insecure and instituting an action to

[1]Reported in 181 Pac. 914; 187 Pac. 410.

foreclose a chattel mortgage on mill machinery before maturity of the debt, the fact that the mortgagee failed to furnish logs or shingle bolts to keep the mill running, as contemplated by a contract between the parties, may be considered as bearing upon his good faith in attempting foreclosure, although the contract did not obligate the mortgagee to furnish the logs.

MITCHELL, J., dissents.

Appeal from a judgment of the superior court for Thurston county, Wright, J., entered June 27, 1918, in favor of the plaintiff, in an action to foreclose a mortgage, tried to the court. Reversed.

*Fremont Campbell* and *Harry H. Johnston,* for appellant.

*Thos. M. Vance,* for respondent.

MACKINTOSH, J.—Upon the respondent's allegation that its security had been rendered insecure, it brought this action, before the maturity of the debt, to foreclose a $4,000 mortgage held by it upon the mill property of appellant. The appellant's defense to the action consisted of its allegation that no justification existed for the premature foreclosure, and that the financial difficulties which were troubling it were occasioned by the failure of respondent to comply with the terms of its contract with appellant to furnish timber from which the appellant was to manufacture shingles.

The respondent leased to one Tucker the property upon which the mill in question was constructed, and contracted with Tucker for the operation of the mill. Tucker assigned the contract to the appellant, which procured from the respondent the sum of $4,000 upon two notes, executed on May 15 and June 1, 1917. Afterwards, a request being made by the respondent for a mortgage, on June 11, 1917, the mortgage securing the notes was executed. Improvements on the

property in the sum of approximately $13,000 were. subsequently made by appellant, and, at the time of the commencement of this foreclosure, the mill and premises were worth in the neighborhood of $25,000. The notes had been renewed and, at the time of the institution of this action, one would have been due in January, 1918, and the other in February, 1918; this mortgage foreclosure was begun in November, 1917. The debt not being then due, the action was begun under the clause of the mortgage which provided that:

". . . all of which property is now in the possession of said party of the first part in Thurston county, Washington, and is free from all liens and incumbrances . . . But if default be made in the payment of said sums of money or the interest thereon, or any part thereof, at the time the same shall become due, or any attempt shall be made to remove any of said property from said county, or to dispose of the same without the written consent of the said second party or its successors or assigns, or if said party shall fail or neglect to take proper care of any of said property, or if at any time said second party shall deem itself insecure, then and thereafter the entire debt secured by this mortgage shall be due and payable."

To entitle a mortgagee to foreclose under the insecurity clause of a mortgage when he "deems" that proceeding necessary, he must act in a reasonable manner. To be allowed to avail himself of the privilege there must exist proper cause to apprehend some loss to his security; he cannot act in a purely arbitrary manner. Respondent, in order to exercise the rights which it claimed, alleged that the appellant was removing certain of the machinery and equipment embraced within the mortgage, and was disposing of it with the intention of defrauding the respondent and other creditors. The proof upon this point shows that

a few small items of no particular value had been sent away from the mill. Their absence in no way could have been intended to, nor did it, impair the respondent's security. It was an ordinary transaction carried on openly and in good faith. As we have already shown, the mortgage security had been greatly increased from the time of the giving of the mortgage until the foreclosure, rather than having been impaired.

Respondent next contends that there was a breach of the warranty contained in the mortgage, in that some of the property mortgaged was not free and clear from all incumbrance, there being, in fact, two conditional sale contracts on part of the mill equipment. The record shows that the respondent must have known of the debts which were represented by the conditional bills of sale before it made the loan to the appellant. Further than this, it is established that one of the appellant's stockholders and officers had, before this action was commenced, made arrangements for a loan and had actually secured the money thereon which he was ready to use in the full extinguishment of the two debts referred to, but that, finding that the respondent was refusing to deliver timber to the appellant, without which the mill could not operate, he returned the money to the bank from which he had borrowed it. Under these facts, the respondent is not entitled to complain as to the existence of these conditional sale obligations.

The appellant further claims that the debts against the mill were in such amounts that his security was rendered doubtful. It is true that the appellant had several outstanding obligations, but it is also true that the mill had just been completed and that when operated would show a first-rate net daily profit, and that it was compelled to cease operations because of a lack

of material to work upon. The mill had been built upon the property of the respondent, and the only cedar timber available for its use was that belonging to respondent. Under the contract between the parties, the respondent contended that it was not obliged to furnish the cedar timber, while the appellant claims that the contract never would have been entered into and the mill constructed without the understanding that the respondent was to provide the timber. While the contract is not explicit upon this point, in view of the entire situation, and giving the language contained in the contract its reasonable interpretation, it would seem that the appellant's contention is correct, and that the difficulties which the respondent now asserts gave it the right to early foreclosure were circumstances occasioned by the respondent's breach of its contract with the appellant. This contract, among other things, provides:

"First party shall at no time be required to furnish logs or bolts to second party when second party has on hand 200,000 feet of logs or 200 cords of bolts. In such event first party may sell excess cedar timber and bolts to third parties. First party shall deliver all cedar logs and bolts on cars on the track of the second party, and first party shall unload all thereunder, or where said logs or bolts are carried by the Skookumchuck river, same shall be delivered by first party to boom of second party.

"(4) Second party shall not be required at any time to accept the delivery of cedar timber or logs hereunder when the amount of his boom, together with the amount of his mill, shall, in the case of cedar logs exceed 200,000 feet, or in case of shingle bolts, exceed 200 cords. Second party shall be liable for loss of cedar timber or bolts after the same are delivered to the boom of second party, or if shipment is made by rail, at shingle mill of second party.

"(5) Second party shall use or put at its shingle mill no timber furnished by third parties, excepting

where first party is unable to furnish sufficient timber or logs to keep second party's shingle mill in operation. In the event second party is required to cut timber or bolts of third parties, second party shall notify first party at least one day in advance of his proposal so to do, and also notify first party at least one day in advance of his resumption of cutting first party's timber or bolts. Should second party receive timber or bolts from third parties the same shall be kept separate from logs or bolts furnished by first party.

"(6)   Second party shall furnish each day to first party a statement of all shingles cut during the preceding day. . . .

"(8)   If timber furnished by first party is sufficient and first party so requires, second party shall operate its mill double.

"(9)   Second party shall pay to first party one-half of all moneys received from sale of shingles made from timber furnished by first party, including one-half of all underweights, such payment to be made to first party as soon as received by second party. Second party shall prepare invoices for all shingles manufactured from timber and bolts furnished by first party and sold by second party, and first party shall mail such invoices to purchasers. Second party shall sell to no persons, firms or corporations whose financial standing is unsatisfactory to first party, and only upon terms of payment satisfactory to first party."

There seems to be no other view to take of this contract than that it was one contemplating and calling for the furnishing of cedar by the respondent in order that appellant could conduct its operations. Accepting this view of the contract, and under the testimony, the respondent was not entitled to institute this action at the time at which it was begun, and the judgment of the lower court is therefore reversed.

CHADWICK, C. J., concurs.

MAIN, J. (concurring)—I am unable to find in the contract between the parties to this action any provision which imposes upon the respondent the duty or obligation of furnishing logs or shingle bolts to the appellant. It seems to me that the contract is carefully drawn to avoid the imposition of such a duty.

The fact that the respondent failed to furnish logs or shingle bolts sufficient to keep the mill in operation may be taken into consideration as bearing upon the good faith of the respondent in attempting to foreclose upon its mortgage.

I therefore concur in the result.

TOLMAN, J., concurs with MAIN, J.

MITCHELL, J. (dissenting) — I am inclined to the opinion of Judge Main that the contract imposes no duty upon the respondent to furnish logs or shingle bolts. But, independent of that consideration, there was a breach of the warranty contained in the mortgage, at the time it was given, because a large and substantial part of the mill machinery necessary to the operation of the mill did not belong to the appellant. In addition, at the time respondent refused to proceed further with the contract, and for some time prior thereto, appellant was sorely pressed and threatened with immediate litigation at the instance of creditors whose claims were overdue and beyond the ability of the appellant to pay. Its condition was one of insolvency. As was said in *Nixon v. Hendy Machine Works*, 51 Wash. 419, 99 Pac. 11, followed in *McKnight v. Shadbolt*, 98 Wash. 665, 168 Pac. 473:

"The evidence plainly shows that it was insolvent in that it was not able to pay its debts in due course of business, and this is the test of insolvency adopted by this court where the rights of creditors are involved."

In such circumstances, respondent was within its rights in the protection of its property to decline to furnish cedar timber, without such conduct constituting any cause for complaint against it.

While possibly not important, it may be noticed that, by the provisions of the first portion of paragraph 5 of the contract, appellant is protected in its right to purchase timber from third parties if necessity arises.

The judgment of the trial court should be affirmed.

### On Rehearing.

[*En Banc.* February 9, 1920.]

Per Curiam.—Upon a rehearing *En Banc*, a majority of the court adhere to the opinion heretofore filed herein, and for the reasons there stated, the judgment of the trial court is reversed.