[No. 30021. Department One. November 29, 1946.]

G. W. GANOUNG et al., Appellants, v. CHINTO MINING COMPANY, Defendant, BANNER MINING COMPANY, Respondent.[1]

O. C. Moore, for appellants.

Hamblen, Gilbert & Brooke, for respondent.

SCHWELLENBACH, J.—This is an appeal from a decree holding that the Banner Mining Company, and not the Chinto Mining Company, is the sole owner and in exclusive possession of certain mining claims and real and personal property located in Stevens county, and dismissing the action.

[1] Reported in 174 P. (2d) 759.

The action to quiet title was commenced in Stevens county by the appellants as stockholders in and for the benefit of the Chinto Mining Company. For the convenience of witnesses, the venue was changed to Spokane county. The amended complaint alleged that the Chinto Mining Company was the owner of the described mining claims and real property in Stevens county, together with certain personal property consisting of unpatented mining claims and mining equipment; and that the Banner Mining Company wrongfully claimed some interest in the property, but that its interest was inferior to that of the Chinto company. This was denied in the answer of the Banner Mining Company, which alleged that it had purchased the property from J. H. Melville, of Sprague (who represented the Sprague stockholders in the Chinto company as trustee), who had theretofore acquired it by purchase from the receiver of the Chinto company by virtue of a sale authorized, held, and confirmed by the superior court for Spokane county. This affirmative matter was denied by the appellants.

Appellants make ten assignments of error, all of which are based upon the assumption that the superior court for Spokane county did not obtain jurisdiction of the parties or of the subject matter in the receivership proceedings, for the reason that the appointment of the receiver was made at an *ex parte* hearing without notice, thus making all of its acts void, including the sale of the property to J. H. Melville, as trustee, and the resulting sale by him to the Banner Mining Company.

The Chinto Mining Company was a corporation organized and existing under and by virtue of the laws of this state, and was engaged in the mining business, owning and having under lease certain mining claims in Stevens county. A number of its stockholders and officers at Sprague had been making advances to the corporation from their personal funds in order to meet the payrolls.

About September 22, 1941, appellant Miles and T. A. Condit, the secretary of the corporation, went to Sprague in order to obtain further advances, but without success. Two days later, on the evening of September 24th, a meeting of

the directors was held at Sprague with Mr. Joseph McCarthy, the attorney for the company. All the directors were present with the exception of Condit. A waiver of notice of the meeting, signed by him, dated September 24th, is in evidence. At the trial, he testified that he actually had signed it about a month later. However, he admitted that he had been informed by Mr. McCarthy of the meeting in the afternoon prior to its being held and knew the purpose for which it was called. He stated that his reason for signing the waiver was to give Mr. McCarthy the benefit of the doubt as to whether he had actually waived.

At the time of the meeting, the company had total liabilities of $37,798.57. Its assets consisted of cash, $63.19, and supplies and assets receivable, $322.67. After a thorough discussion, it was decided to apply to the superior court for Spokane county for the appointment of a receiver. On the next day, a petition was presented to the superior court for Spokane county, verified by S. J. Ringwood, as its president, alleging that the corporation was insolvent and asking that a receiver be appointed. At an *ex parte* hearing, without notice, on the same day, the court appointed Roger O. Oscarson as receiver and set his bond at ten thousand dollars. Oscarson qualified and immediately proceeded to endeavor to raise funds. Various methods were attempted, but without success.

Finally, on January 26, 1942, the court directed the receiver to sell the assets of the corporation. Only one bid was received, that of J. H. Melville, as trustee, who submitted one for $10,601.70. The bid was approved by the court March 2, 1942, and the receiver was directed to execute and deliver to the bidder a deed covering the real property and a bill of sale for the personal property. This was done, and Melville later conveyed the property to the Banner Mining Company, which had been formed for the purpose of taking over and operating the property.

During the receivership proceedings, appellant Miles assisted the receiver in the plans for reorganization and in the sale. He obtained subscribers. He attended various meetings, even after the Banner Mining Company had been

organized. He was present in court on at least one of the receivership hearings. He was paid by the receiver for services rendered, and filed a claim with him in the amount of $2,312.21. At no time did he protest or object to the receivership.

The receiver, in due time, filed an inventory, reported to the directors, reported to the shareholders, proposed various plans for reorganization, made reports to the court, gave notice to the creditors, and paid claims. Certain creditors, having sold equipment to the Chinto company under conditional sales contracts, filed actions in the receivership proceedings and repossessed the equipment. After the sale of the assets to Melville, the receiver made his final report, and, after a hearing, was discharged and his bond exonerated. At no stage of the proceedings did any stockholder, creditor, or interested party raise any question as to the right of the court originally to hear the matter in an *ex parte* proceeding in the manner now complained of.

Rem. Rev. Stat., § 740 [P.P.C. § 91-1], provides as follows:

"A receiver is a person appointed by a court or judicial officer to take charge of property during the pending of a civil action or proceeding, or upon a judgment, decree, or order therein, and to manage and dispose of it as the court or officer may direct."

Rem. Rev. Stat. (Sup.), § 741 [P.P.C. § 91-3], subd. 5, provides that a receiver may be appointed by the court in the following cases:

"When a corporation has been dissolved, or is in the process of dissolution or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights, and when the court in its sound discretion deems that the appointment of a receiver is necessary to secure ample justice to the parties;  .  .  ."

The doctrine that the appointment of a permanent receiver at an *ex parte* hearing without notice to the opposing party, is void, cannot be invoked by these appellants. Because of their acquiescence in all the matters occurring in the receivership proceedings, they are not now

in a position to question, in this action, the appointment of the receiver.

*Davenport Nat. Bank v. Ditmar,* 134 Wash. 439, 235 Pac. 955, was an action for judgment on a promissory note. A receiver was asked for and appointed. The defendant, in her answer to the action, consented to the appointment of the receiver. After the receiver had operated the farm for two years, he petitioned to sell the property. Such sale was made, reported, and confirmed. After the sale, the defendant refused to vacate the premises. She filed a petition, alleging that the court had no power or authority to appoint a receiver, and that fraud had been practiced on her. After disposing of the charge of fraud, this court held, p. 441:

"The other assignments of error present the question of the validity of the appointment of the receiver and of his acts as such. The argument on behalf of the appellant is that the plaintiff was a simple contract creditor, and that, under the statutes of this state, a court of equity will not exercise jurisdiction by way of interference through a receiver with an individual debtor's property prior to judgment. It may be seriously questioned, under the proof in this case, if there was any interference with appellant's property by the appointment of a receiver, or anything other than prosecuting and carrying out a plan according to her own choice and desires to save her estate if possible from threatened ruin. But whether so or not, we are satisfied that the conduct of the appellant has been such that she must be held to have acquiesced in, and to be estopped from denying, the validity of the receivership.

"She promptly consented in writing to the appointment made. To supply the receiver with means to operate the farm receiver's certificates were authorized, issued and sold in considerable amounts during the two years the receiver operated the farm under the directions of the court. Upon notice to creditors some thirty of them, unsecured, presented claims to the receiver which upon consultation with the appellant as to their being correct were approved by the receiver. She continued to reside on the farm with her family by permission of the receiver and received from him advancements for her support and compensation for her services rendered on the farm. The proceeds from the farm were applied on the payment of expenses, interest on outstanding mortgages which she owed, and taxes. The re-

ceiver made reports to the court from time to time, and in the fall of 1923, after two farming seasons, it appearing useless to make further effort to reduce the indebtedness except by sale of property, a petition for authority to sell was granted and property sold. No objection to the sale was made by the appellant, though she knew of the petition for it and of the sale made. She attended the sale in person and by her attorney. She filed objections to the confirmation, not on the ground of the lack of power to make the sale, but because of the alleged inadequacy of the price obtained and that it was an inopportune time to sell the property. Hearing on the confirmation was continued from time to time at her request, until finally her attorney no longer requested continuance and approved the form of the order confirming the sale and directing conveyance to be made to the purchaser. She was conversant with all proceedings and steps taken, and never appealed from any of them until the present ones arising on proceedings after the sale had been made and confirmed, purchase money paid and deed issued. Many or nearly all the claims, in large amounts, of the unsecured creditors have been hindered and delayed in collection and have become otherwise barred in reliance upon the receivership proceedings.

"Under such circumstances as are shown in this record, the appellant cannot now be heard to complain that the receiver was improperly appointed. She alone is complaining, none of her creditors are objecting.

"High on Receivers (4th ed.), § 37, says:

" 'Where parties to the action are before the court upon the appointment of a receiver, and have a right to object to the order of the court, or to appeal therefrom, but submit to the order without objection and without subsequently appealing, their submission will be deemed an acquiescence in the order, so far as to render it the law of the case with respect to the right to a receiver.' "

In *Pratt v. Anderson,* 126 Wash. 30, 216 Pac. 885, the receiver, after his appointment, instituted an action to set aside an alleged fraudulent conveyance. By demurrer and by affirmative defense, the defendants attacked the appointment of the receiver on the ground that such appointment was made without prior notice to them other than by service of an order to attend supplemental proceedings and submit to examination. This court held:

"These questions could and should have been raised directly by an appeal from the order appointing the receiver, and the present attempt to raise them as a defense to the action brought by the receiver, after his appointment and qualification, is a collateral attack which cannot, under elemental rules, be now considered."

In the instant case, the appellants stood silently by during the entire receivership proceedings, permitted claims to be filed and paid, offered no protest against the sale of the assets of the Chinto Mining Company nor against the sale by Melville to the Banner Mining Company, and now, by a separate and distinct action to quiet title, they are attempting to attack and overthrow all the matters they had theretofore acquiesced in. Their prior actions have estopped them to question, in this proceeding, the matters complained of.

The judgment will be affirmed.

MILLARD, C. J., ROBINSON, SIMPSON, and JEFFERS, JJ., concur.

January 6, 1946. Petition for rehearing denied.