[No. 4834–1.  Division One.  May 8, 1978.]

S. M. SAGE, *Appellant*, v. INTERGRAPHICS, INC., *Respondent*.

*Ritchie & Thurston* and *Bruce T. Thurston,* for appellant.

*Hilyer & Levinski* and *Gale P. Hilyer, Jr.,* for respondent.

CALLOW, J.—Boardtech, Inc., prior to its insolvency, was a Washington corporation engaged in the manufacture of electronic devices, and S. M. Sage is the duly appointed receiver for Boardtech, Inc. Intergraphics, Inc., a Washington corporation and creditor of Boardtech, engages in a related business, offering dimensionally precise graphic products and services to a variety of industries. Intergraphics, Inc., is a closely held corporation operated by Tom Paur, its primary stockholder and president.

Commencing in the spring of 1974, Paur as president of Intergraphics, Inc., contemplated a transaction wherein he would have Intergraphics acquire Boardtech as an affiliated and/or subsidiary company. In furtherance of this transaction, Paur had Intergraphics make payment to some of Boardtech's creditors. In July 1974, Paur acquired about 49 percent of Boardtech's stock and commenced to guide Boardtech in an attempt to put it on a sound business basis.

On or about September 17, 1974, Boardtech assigned to Intergraphics all its accounts receivable, giving Intergraphics control over the payments received on the accounts receivable. At this time, Boardtech was indebted to Intergraphics in the sum of approximately $20,000 on an unsecured open account, and the face value of the accounts receivable on that date was $16,512.89.

After receiving the assignment, Intergraphics opened a bank account in a Kirkland bank and entitled the account "special account," and deposited all funds received from Boardtech's accounts receivable to that account. Intergraphics collected $9,756.18 on Boardtech's accounts receivable and paid out approximately $9,800 to other

creditors of Boardtech, Inc. Subsequent to January 1975, Intergraphics transferred the funds from the "special account" to Intergraphics' general operating account maintained at Seattle–First National Bank. Boardtech's creditors thus were not paid directly out of the special account.

In November of 1974, an application was made for a receiver to be appointed for Boardtech. S. M. Sage was appointed and qualified, and on March 21, 1975, commenced this action against Intergraphics, Inc., to recover the accounts receivable or the value thereof on the theory that the transfer constituted a voidable preference.

At trial, Intergraphics agreed that the receiver was entitled to the uncollected portion of the accounts receivable, leaving as the sole issue to be determined whether the value of the accounts collected by Intergraphics should be returned to the receiver. Intergraphics asserted that it had not retained the proceeds of the accounts assigned, so it had not obtained a greater percentage of its debt than other unsecured creditors and therefore had not received a preference. The evidence reflected that many of the payments made by Intergraphics to Boardtech's creditors preceded the assignment of the accounts receivable to Intergraphics, and thus were made with business funds of Intergraphics and not with the proceeds from the accounts receivable of Boardtech.

The receiver attempted to establish that Intergraphics had utilized its own credit to obtain goods billed to Boardtech and had entered into an arrangement with third parties, not guaranteeing the obligations of Boardtech, but pledging its own credit for goods and services delivered to Intergraphics. An objection to this testimony was sustained on the theory that it was barred by the statute of frauds. Offers of proof that the debt was an original one of Intergraphics and not a collateral promise to answer for the debts of another were rejected by the court.

At the conclusion of the receiver's case, the court granted Intergraphics' motion to dismiss. The receiver's motion for

a new trial was denied, and findings of fact, conclusions of law and judgment were entered as follows:

1. That on or about September 17, 1974, Intergraphics, Inc. took an assignment of all the accounts receivable of the corporation Boardtech, Inc.

2. That at the time of the taking of the assignment of the accounts receivable, Boardtech, Inc. was insolvent, to the knowledge of defendant Intergraphics, Inc.

3. That at the time of the taking of the assignment, Boardtech, Inc. was indebted to Intergraphics, Inc. in a sum not exceeding $20,000.

4. That subsequent to the aforesaid assignment, Intergraphics, Inc. collected on the accounts receivable approximately $9,500, and used said sum to make payments on the obligations of Boardtech, Inc. and paid the total sum of approximately $9,800 to other creditors of Boardtech, Inc.

5. That all sums collected on the accounts receivable by Intergraphics, Inc. were the property of Boardtech, Inc.; none of the money received on accounts receivable was used to reduce the obligation owed by Boardtech to Intergraphics, Inc., which was approximately $20,000.

6. That at the conclusion of Intergraphics, Inc. collection of Boardtech, Inc.'s accounts receivable, Intergraphics, Inc. advanced sums in excess of those received; Intergraphics, Inc. received no preferential treatment and/or reduction of the indebtedness of Boardtech, Inc. to Intergraphics, Inc., enabling Intergraphics, Inc. to receive a higher percentage of its obligation than the other general creditors. That to the contrary, Intergraphics, Inc. used said accounts receivable money to pay some of the creditors of Boardtech, Inc. at the rate of 100 cents on the dollar, using none of the money collected to reduce the indebtedness of Boardtech, Inc. to Intergraphics, Inc.

The issues raised are: (1) Is the receiver's action defeated by the failure of the pleadings and record below to demonstrate that Intergraphics received notice of the appointment of the receiver? (2) Did Intergraphics receive a preference?

CR 66(c) requires that notice of a receiver's appointment be published and mailed to every known creditor of the

insolvent. The failure to give such notice voids the appointment of the receiver. *F.S. Harmon & Co. v. Olympic Furniture Co.,* 161 Wash. 15, 296 P. 174 (1931).

■ The record before us does not show that such notice was given, but the validity of the appointment of a receiver may not be attacked collaterally. *Pratt v. Anderson,* 126 Wash 30, 216 P. 885 (1923). In *Pratt,* a receiver was appointed following the entry of several judgments against the debtor. When the receiver began a separate action against the debtors to set aside a fraudulent conveyance, the defendant–debtors challenged the receiver's appointment on the ground that proper notice of the pendency of the appointment had not been given. The court found that this question could and should have been raised in an appeal from the order appointing the receiver, but could not be presented in a collateral action. The absence of notice cannot be raised here as a collateral challenge to the authority of the receiver to proceed. *Ganoung v. Chinto Mining Co.,* 26 Wn.2d 566, 174 P.2d 759 (1946).

■ The payment by Intergraphics of Boardtech's creditors is not a defense to the charge that it received a preference. RCW 23.72.010 defines a preference as a transfer of any of the property of an insolvent corporation, the effect of which at the time the transfer was procured would be to enable any one of the creditors of such corporation to obtain a greater percentage of its debt than any other creditor of the same class. Thus, only the situation at the time of the assignment of Boardtech's accounts receivable to Intergraphics is considered. The actions of Intergraphics and its disposition of the proceeds of the accounts receivable after the assignment is irrelevant to the determination of whether a preference was given or not. The preference voiding statute indicates no need to establish a benefit in the recipient of the preference in order to make it voidable. RCW 23.72.030 states in part:

> Any preference made or suffered within four months before the date of application for the appointment of a receiver, may be avoided and the property or its value

recovered by such receiver, *if the person receiving the preference or to be benefited thereby* or his agent acting therein shall then have reasonable cause to believe that the debtor corporation is insolvent.

(Italics ours.)

The purpose of the preference voiding statute is to prevent unequal treatment of the insolvent's creditors. It has been pointed out under the similar bankruptcy act that

The test of a preference, under the act, is the payment, out of the bankrupt's property, of a larger percentage of the creditor's claim than other creditors of the same class receive, and not the benefit or injury to the creditor preferred.

*Swarts v. Fourth Nat'l Bank,* 117 F. 1, 4 (8th Cir. 1902). *McKnight v. Shadbolt,* 98 Wash. 665, 168 P. 473 (1917), recognized this policy in voiding a similar preference. There, a preference resulting from the transfer of a chattel mortgage by the insolvent to a creditor in spite of the fact that the creditor in return paid an almost equal amount of the insolvent's debts to others was set aside. The court stated that to constitute a preferential transfer, it is immaterial to whom the transfer is made, if it is made for the purpose of paying the claim of one creditor in preference to the claim of others.

The transfer by Boardtech of accounts receivable to Intergraphics must be regarded as a preference under RCW 23.72.010 if the effect of the transfer was to enable any one of the creditors to obtain a greater percentage of its debt than any other creditor of the same class. At trial, Intergraphics stipulated that on the date of the transfer there were unsecured creditors of Boardtech that had not then received payment on their obligations. Viewed from the date of the assignment, the enforcement of the transfer would have resulted in Intergraphics' receiving a greater percentage of its debt than other creditors of the same class. Viewed from the vantage point of the assignment's effect upon the estate, the vice of the transaction is that it prevented equal treatment of Boardtech's creditors by

diminishing Boardtech's estate by the amounts paid to creditors by Intergraphics. The creditors that were paid received all or part of what they were owed; the creditors not paid will have payment on their claims diminished by the amount paid out by Intergraphics. If transactions of this sort were permitted, one could obtain by indirection a preference which would not be countenanced if the creditor had acted directly with the debtor.

Intergraphics' motion to dismiss having been granted at the conclusion of the plaintiff–receiver's case, and this court now reversing that dismissal on appeal, it is appropriate that the cause be remanded for further proceedings in order that the defendant may present such evidence it may have. CR 41(b)(3); 5 J. Moore, *Federal Practice* § 41.13[2] (2d ed. 1978). The judgment of the trial court is reversed and the cause is remanded for action consistent with this opinion.

ANDERSEN and DORE, JJ., concur.

Petition for rehearing denied June 22, 1978.

Review by Supreme Court pending January 5, 1979.